Michael G. Doan #175649
Karen S. Spicker #127934
Doan Law, LLP
1930 S Coast Hwy #206
Oceanside, CA 92054
Phone (760) 450-3333 • Fax (760) 720-6082
karen@doanlaw.com
Attorney for Plaintiff, SUSAN KOSAKA

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

SUSAN KOSAKA
  Plaintiff,

Vs.

WESTERN DENTAL SERVICES, INC.,
and Does 1 through 10,

  Defendants.

Case No.: **'20 CV 0556 H    JLB**

**COMPLAINT FOR DAMAGES RESULTING FROM VIOLATING 11 U.S.C. §362; CCC 1788.14; CCC 1788.17; CBPC §17200;**

**JURY TRIAL DEMANDED**

## I.
## INTRODUCTION

1) Plaintiff, SUSAN KOSAKA ("Kosaka"), brings this lawsuit against Defendant, WESTERN DENTAL SERVICES, INC. ("WDS"), for violating the Automatic Stay under 11 U.S.C. §362, California Civil Code §1788.14 and §1788.17 ("RFDCPA"), and California Business & Professions Code §17200 (Unfair Competition Law "UCL").

2) In summary, WDS unlawfully communicated with Kosaka during an active Chapter 7 Bankruptcy despite knowledge of legal representation, unlawfully communicated with Kosaka after she received her Chapter 7 discharge Bankruptcy despite knowledge of legal representation, and to date refuses to stop its unlawful communications to collect on its discharged debt despite thirteen (13) Notices of Bankruptcy and Attorney Representation being sent to it.

3) The legislative history and primary purpose of Chapter 7 is to provide a debtor with a "fresh start," free from pre-petition unsecured creditors.

4) On September 3, 1999, "urgency legislation" was passed adding Civil Code §1788.17 to the RFDCPA which incorporated therein nearly all of the provisions of the Federal Fair Debt Collection Practices Act ("FDCPA") and superseded numerous provisions of the RFDCPA, such as Civil Code §1788.14, to the extent inconsistent, and which was enacted in 1977. The California Legislature made the following findings and purpose in creating Civil Code §1788, the RFDCPA:

   1) *The banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts. Unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers*

   2) *There is a need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty and due regard for the rights of the other.*

   3) *It is the purpose of this title to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts, as specified in this title.*

## II.
## <u>JURISDICTION AND VENUE</u>

5)  Jurisdiction of this Court arises under 28 U.S.C. §1334(b). See also <u>Gray v. Preferred Bank</u>, 2010 U.S. Dist. LEXIS 104645, at *6-8 (S.D. Cal. Sep. 30, 2010)).  Supplemental jurisdiction exists on the RFDCPA and UCL claims.

6)  Venue is proper in this District as Plaintiff is a natural person residing in the County of San Diego and the Defendants regularly conduct business within the County of San Diego.   Furthermore, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the County of San Diego, California.  Therefore, venue is proper within this District pursuant to 28 U.S.C. § 1391.

## III.
## <u>PARTIES</u>

7)  Kosaka is a natural person residing in San Diego County, California.

8)  Kosaka is a "debtor" as that term is defined by 11 USC 101(13).

9)  Kosaka is a "debtor" under California Civil Code §1788.2(h).

10)  WDS fully acquired SMILE WIDE DENTAL ("SWD") in March 2017.

11)  WDS is a California Corporation located at 530 S Main Street, Suite 600, Orange, CA 92868.

12)  WDS is a "creditor" as defined by 11 USC 101(10).

13)  WDS is a "person" as that term is defined in California Civil Code §1788.2(g).

14)  WDS in the ordinary course of business regularly engages in debt collection as that term is defined in California Civil Code §1788.2.

15)  WDS is a "debt collector," as that term is defined by California Civil Code §1788.2(c).

16) Kosaka is ignorant of the true names and capacities of each Defendant sued herein as DOES 1 through 10 (hereinafter "Does"), inclusive, and therefore sues those Defendants by such fictitious names.  Kosaka will seek leave to amend this Complaint to include the true names and capacities of those Doe Defendants when they have been ascertained.  At all times mentioned herein, each of the Does sued herein was the agent and/or employee of one or more of the remaining Defendants and was acting within the purpose and scope of such agency and/or employment.

## IV.
## FACTS

17) Kosaka realleges and incorporates by reference the forgoing paragraphs as if fully set forth herein.

18) In July 2019, Kosaka incurred an unsecured debt with SWD and WDS in the amount of approximately $60.00.

19) On September 30, 2019, Kosaka filed a Chapter 7 Bankruptcy Case (19-05933).

20) SWD was listed on schedule "F" as an unsecured creditor in the amount of $60.00.

21) Notice of the Bankruptcy and Attorney Representation was sent to SWD by the Bankruptcy Noticing Center through U.S. Mail on October 3, 2019. See Attachment "A."

22) WDS and SWD were on legal notice of both the Bankruptcy and Automatic Stay since at least since the beginning of October 2019.  See In re Ramirez, 183 B.R. 583, 589 (9th Cir. BAP 1995) (Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay.)

23) The forgoing notice served as a writing by the Kosaka's attorney, Doan Law Firm ("DLF"), that she was represented by DLF with respect to the consumer debt held by WDS and such notice included DLF'S name and address and a request by the same that all communications regarding the consumer debt be addressed to DLF.

24) Despite the forgoing, WDS and SWD continued to contact Kosaka each month during the Bankruptcy from October 2019 thru December 2019, to collect on its claim that was subject to the Bankruptcy Automatic Stay.  See Attachment "B."

25) Despite the forgoing, DLF sent an additional notice of the Bankruptcy and Attorney Representation via U.S. First Class Mail to SWD and WDS on December 31, 2019. See Attachment "C."

26) On January 10, 2020, SWD was sent an additional Notice of Discharge and Attorney Representation by US Mail by the Bankruptcy Noticing Center. See Attachment "D."

27) Despite the three (3) Notices SWD and WDS received, it continued to communicate with Kosaka and collect on its discharged debt. See Attachment "E."

28) On January 27, 2020, Kosaka retained DLF to address the forging unlawful activity.

29) On January 27, 2020, DLF sent a mitigation letter to WDS and SWD by two (2) separate methods of US First Class Mail and three (3) attempted facsimiles. See Attachment "F."

30) Despite the forgoing seven (7) notices, SWD and WDS continued to communicate with Kosaka to collect on its discharged debt in February 2020. See Attachment "G."

31) On March 2, 2020, DLF sent its final mitigation letter to WDS and SWD by three (3) separate methods of US First Class Mail-Certificate of Mailing, four (4) attempted facsimiles, and one (1) email. See Attachment "H."

32) Despite the forgoing thirteen (13) Notice of Bankruptcy and Attorney Representation, SWD and WDS continued to communicate with Kosaka to collect on its discharged debt in March 2020. See Attachment "I."

33) SWD and WDS refuse to abide by the RFDCPA and Bankruptcy Laws.

34) Kosaka brings this action to force SWD and WDS into compliance with the RFDCPA and Bankruptcy Laws.

35) Kosaka lost her mother 17 months ago, who lived with her and was one of her best friends. Kosaka's mother often accompanied her to SWD. Accordingly, every time Kosaka sees a letter from SWD she gets sick to her stomach and it reminds her of the untimely death of her mother. It was never one of Kosaka's goals to file for bankruptcy, but sadly her past now comes back each month to haunt her.  The constant harassment by SWD and WDS reminds her time and time again of this sad time in her life. Words are not enough to explain how much this bothers Kosaka and she is now paranoid of everything causing credit problems again and every time they send a letter she literally shakes.

36) Kosaka sustained actual damages as a direct result of the unlawful conduct by WDS, including but not limited to:

      a. Emotional distress, pain and suffering, sleeplessness, hopelessness, annoyance, aggravation, anxiety, depression, worry, fear, distress, frustration, embarrassment, etc.;
      b. Out of pocket costs;
      c. Other incidental and consequential damages; and
      d. Attorney fees and costs.

# V.
# FOUR (4) CAUSES OF ACTION

## 1) WILLFUL VIOLATIONS 11 U.S.C. §362

37) Kosaka realleges and incorporates by reference the forgoing paragraphs as if fully set forth herein.

38) The Automatic Stay under 11 USC §362(a) provides in pertinent part:

> *Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of*
>
> *1)    the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;*
>
> *6)    any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;*

39) A creditor also has an affirmative duty to remedy an automatic stay violation once it becomes aware of the violation. <u>Linblade v. Knupfer (In re Dyer)</u>, 322 F.3d 1178, 1192 (9th Cir. 2003).

40) WDS violated 362(a)(1) and (6) monthly at least three (3) separate times when it attempted to recover its pre-petition claim against Kosaka by harassing Kosaka to pay its pre-petition claim of $60.00.

41) WDS'S communications after discharge and its refusal to withdraw its previous communications during the Bankruptcy resulted in additional discharge violations under 11 USC 524, but created continuing liability under 362(k).

1
2
3
4
5
6
7
8
9
10

> *Cognizable effects of a violation of the automatic stay may linger after the formal expiration of the stay. For example, the stay with respect to an individual debtor expires upon entry of discharge or dismissal of the case. 11 U.S.C. § 362(c)(2).*
>
> *Nevertheless, consequences directly attributable to the violation of the stay before its expiration may continue to be visited upon a debtor for an additional period of time.* <u>Snowden v. Check Into Cash of Wash., Inc. (In re Snowden)</u>*, 769 F.3d 651, 659 & 662 (9th Cir. 2014). Hence, liability for a stay violation continues at least until full restitution is actually made or, if after the expiration of the stay, the court orders full restitution.* <u>Snowden</u>*, 769 F.3d at 659 & 662 (ambiguous settlement offer does not terminate accrual of liability for stay violation).*
>
> <u>Sundquist v. Bank of Am., N.A.</u>, 566 B.R. 563, 586 (Bankr. E.D. Cal. 2017).

11
12

42)  WDS'S violations of 362(a)(1) and (6) subjects it to damages under 11 USC §362(k), which provides the following remedies:

13
14
15
16

> *Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.*

17
18
19
20
21

43)  Willful violations of 11 USC §362 are essentially strict liability in nature. See <u>Associated Credit Servs. v. Campion (In re Campion)</u>, 294 B.R. 313, 317-18 (B.A.P. 9th Cir. 2003); <u>Emmert v. Taggart (In re Taggart)</u>, 548 B.R. 275, 290 (B.A.P. 9th Cir. 2016); <u>In re Shaw</u>, No. NC-15-1406-BSKu, 2017 Bankr. LEXIS 1786, at *15 (B.A.P. 9th Cir. June 27, 2017).

22
23
24
25
26

44)  Damages from willful stay violations are mandatory. See <u>Simbas v. Taylor (In re Taylor)</u>, 884 F.2d 478, 483 (9th Cir. 1989) (*If a bankruptcy court finds that a willful violation of the automatic stay has occurred, an award of actual damages to an individual debtor, including attorney's fees, is mandatory*.)

27
28

45) The absolute refusal to end communications despite the thirteen (13) Notices of Bankruptcy Commencement and Discharge were not only additional violations under <u>Linblade v. Knupfer (In re Dyer)</u>, but also amounted to the blatant *reckless and callous disregard to the Bankruptcy Code and rights of Kosaka* which mandates additional punitive damages. See <u>In re Bloom</u>, 875 F.2d 224, 228 (9th Cir. 1989), *"We have traditionally been reluctant to grant punitive damages absent some showing of reckless or callous disregard for the law or rights of others."*

46) Since WDS has compliance issues with the Bankruptcy Code, punitive damages are necessary to force WDS to provide additional training to its employees, new policies, and new guidelines, to effectuate future compliance with the Bankruptcy Code.

47) Such punitive damages will save future debtors from similar situations such as Kosaka who has had to resort to an Order from this Court as her only remaining means to force WDS to comply with 11 USC 362 and 11 USC 524.

48) *"In the context of the Bankruptcy Code, a key societal interest underlying § 362(k)(1) is to have a self-executing private law mechanism to enforce the automatic stay that is crucial to effective operation of the bankruptcy system. The statutory punitive damages remedy evinces a public purpose that the automatic stay not be a toothless tiger that can be flouted with impunity."* <u>Sundquist v. Bank of Am., N.A.</u>, 566 B.R. 563, 615 (Bankr. E.D. Cal. 2017).

## 2) WILLFUL VIOLATIONS OF CCC 1788.14(c)

49) Kosaka realleges and incorporates by reference the forgoing paragraphs as if fully set forth herein.

50) California Civil Code §1788.14 of the RFDCPA provides in pertinent part:

> *No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:*
>
> > *(c) Initiating communications, other than statements of account, with the debtor with regard to the consumer debt, when the debt collector has been previously notified in writing by the debtor's attorney that the debtor is represented by such attorney with respect to the consumer debt and such notice includes the attorney's name and address and a request by such attorney that all communications regarding the consumer debt be addressed to such attorney, unless the attorney fails to answer correspondence, return telephone calls, or discuss the obligation in question.*

51) Despite the thirteen (13) Notices of Attorney Representation, WDS continued to communicate with Kosaka monthly thru US Mail and refuses to stop as of the date of this lawsuit.

52) The communications by WDS on a debt not legally enforceable were not authorized under the billing statement exception of California Civil Code §1788.14(c), London v. Wells Fargo Bank, N.A., 2018 U.S. Dist. LEXIS 151270, at *7-8 (E.D. Cal. Sep. 5, 2018).

53) The foregoing violations by WDS were willful and knowing violations of Title 1.6C of the California Civil Code (RFDCPA), and trigger actual damages, attorneys' fees and costs, and statutory damages of up to $1,000.00 under California Civil Code Section §1788.30.

### 3)   WILLFUL VIOLATIONS OF CCC 1788.17

54) Kosaka realleges and incorporates by reference the forgoing paragraphs as if fully set forth herein.

55) California Civil Code §1788.17 of the RFDCPA provides in pertinent part:

> *Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the*

*provisions of §1692b to §1692j, inclusive, of, and shall be subject to the remedies in §1692k of Title 15 of the United States Code.*

56) 15 U.S.C. §1692a(c) of the FDCPA provides in pertinent part:

*(a)Communication with the consumer generally Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—*

*(2)if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer;*

57) Despite the thirteen (13) Notices of Attorney Representation, WDS continued to communicate with Kosaka monthly thru US Mail and refuses to stop as of the date of this lawsuit.

58) WDS violated 15 U.S.C. §1692a(c) as incorporated into the RFDCPA by communicating directly with Kosaka with its letters when it knew DLF represented Kosaka on the debt.

59) California Civil Code §1788.17 required that WDS comply with 15 U.S.C. §1692a(c).

60) The foregoing violations of 15 U.S.C. §1692a(c) by WDS resulted in violations of California Civil Code §1788.17.

61) California Civil Code Section 1788.17 provides that WDS is subject to the remedies of 15 U.S.C. §1692k for failing to comply with the provisions of 15 U.S.C. §1692(c).

62) The foregoing violations by WDS were willful and knowing violations of Title 1.6C of the California Civil Code (RFDCPA), and trigger actual

damages, attorneys' fees and costs, and statutory damages of up to $1,000.00 under California Civil Code Section §1788.30.

63) The foregoing violations by WDS trigger statutory damages of up to $1,000.00 under 15 U.S.C. §1692k pursuant to California Civil Code Section 1788.17.

### 4)    WILLFUL VIOLATIONS TRIGGERING CBPC §17200

64) Kosaka realleges and incorporates by reference the above paragraphs as though set forth fully herein.

65) Kosaka and WDS are each "person(s)" as that term is defined by Cal. Bus. & Prof. Code §17201.  Cal. Bus. & Prof. Code §17204 authorizes a private right of action.

66) Cal. Bus. & Prof. Code §1704, a provision of the UCL (Cal. Bus. & Prof. Code §§17200-17209), confers standing to prosecute actions for relief not only on the public officials named therein, but also on private individuals, i.e., "any person acting for the interest of itself, its members or the general public." [emphasis added].  The California Supreme Court explained that the purpose of the UCL is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. McGill v. Citibank, N.A., 2 Cal.5th 945,954 (2017). The primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction. Id.  Public injunctive relief is a remedy available to private plaintiffs under the UCL. Id. at 961.

67) "Unfair competition is defined by Bus.& Prof. Code §17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair", business act or practice, (3) a "fraudulent" business act or practice, and (4) an "unfair, deceptive,

untrue, or misleading advertising."  The definitions in §17200 are written in the disjunctive, meaning that each of these "wrongs" operate independently from the others.

### A. "Unlawful Prong"

68) As set forth above, WDS knowingly and intentionally violated 11 U.S.C. §362, 11 U.S.C. §524, California Civil Code §1788.14, California Civil Code §1788.17, and satisfies the "unlawful" business acts or practices perpetrated on borrowers.

69) WDS had other reasonably available alternatives to further its legitimate business interests, other than the conduct described herein.

70) Kosaka reserves the right to allege further conduct that constitutes other unfair business act or practices.  Such conduct is ongoing and continues to this date.

### B. "Unfair Prong"

71) WDS'S actions and representations also constitute an "unfair" business act or practice under §17200 in that its conduct is substantially INJURIOUS TO Kosaka, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. Without limitation, the business practices described herein are "unfair" and shock the conscience because they offend established public policy, violated 11 U.S.C. §362 and 11 U.S.C. §524, violated California Civil Code §1788.14, violated California Civil Code §1788.17, and are objectively immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Kosaka.

72) WDS could and should have furthered its legitimate business interests by not perpetrating its "unfair" business act on Kosaka.

73) Kosaka could not have reasonably avoided the injury she suffered.

74) Kosaka reserves the right to allege further conduct that constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

# VI.
# PRAYERS FOR RELIEF

WHEREFORE, Kosaka having set forth her claims for relief against WDS herein, Kosaka respectfully requests this Court to enter Judgment against WDS as follows:

A. Declaratory relief finding that WDS willfully violated the automatic stay under 362 and continues to violate the discharge injunction under 524;

B. An award of Actual Damages of no less than $20,000.00 under 11 U.S.C. §362(k) for the actual damages Kosaka sustained;

C. An award of Punitive Damages of no less than $50,000.00 under 11 U.S.C. §362(k) for the *reckless and callous disregard of 11 USC 362 and rights of Kosaka*;

D. An award of Attorney's fees and costs in bringing this action, according to proof and with a fee multiplier, pursuant to 11 U.S.C. §362(k);

E. Injunctive relief under under 11 U.S.C. §362(k) that WDS cease all future communications with Kosaka.

F. Injunctive relief under under 11 U.S.C. §362(k) that WDS provide additional training to its employees, new policies, and new guidelines, to effectuate future compliance with the Bankruptcy Code;

G. An award of Actual Damages of no less than $20,000.00 under Cal. Civ. Code §1788.30(a) for the actual damages Kosaka sustained;

H.  An award of Attorney's fees and costs, according to proof and with a fee multiplier, under Cal. Civ. Code §1788.30(a):

I.  Statutory damages of **$**1,000.00 pursuant to California Civil Code §1788.30(b);

J.  Statutory damages of **$**1,000.00 pursuant to California Civil Code §1788.17 incorporating 15 U.S.C. §1692k for violations of 15 U.S.C. §1692a(c)and other economic damages;

K.  That the conduct of WDS complained of herein be determined and adjudged to be in violation of the rights of Kosaka under Bus. & Prof. Code §17200;

L.  An award of actual damages subject to proof at trial against WDS pursuant to Cal. Bus. & Prof. Code §17200;

M. An award of punitive damages of $50,000 against WDS pursuant to Cal. Bus. & Prof. Code §§17200 et. seq.;

N.  An award of attorney's fees and costs of suit against WDS pursuant to Cal. Bus. & Prof. Code §§17200, et. seq.;

O.  An award of equitable and injunctive relief pursuant to Cal. Bus. & Prof. Code § 17200 against WDS;

P.  Declaratory Relief against WDS, declaring their practices in violation of 11 USC 362 and 524, California Civil Code Section §§1788.14, and 1788.17 and 15 U.S.C. § 1692a(c), constitute "unfair" and "unlawful" business Practices under Bus. & Prof. Code §17200; and

Q.  Such other and further relief as the Court may deem just and proper.

Dated: March 24, 2020                    Respectfully submitted,

                                 By:    s/ Karen Spicer
                                        Karen Spicer, Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY DEMAND**

Plaintiff respectfully demands a trial by jury on all issues so triable in this lawsuit.

Dated this _24__ day of March 2020.

<u>s/ Karen Spicer</u>
Karen Spicer, Attorney for Plaintiff